STATE of Missouri,
Plaintiff-Respondent,

v.

Robert McFALL, Jr.,
Defendant-Appellant.

No. 10929.

Missouri Court of Appeals,
Southern District,
Division One.

July 5, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Richard L. Parker, Asst. Public Defender, Vienna, for defendant-appellant.

GREENE, Judge.

Defendant Robert McFall, Jr. was convicted of tampering with a motor vehicle, in violation of § 560.175, RSMo 1969, V.A.M.S., and was sentenced to three years' imprisonment in accordance with the jury verdict. Defendant appeals, alleging as his sole ground that the trial court erred in overruling defendant's motion to strike the testimony of witness Chris Sawyer Hill for the reason that her testimony was qualified, in that she could not say, under oath, that her identification of the defendant at any time and place germane to the issues presented, was positive. We affirm.

A brief recital of the state's evidence given at the trial is as follows. On December 23, 1976, at about 10:20 a. m., State Highway Patrolman Glenn Ford was patrolling Highway I–44 in Phelps County. He was accompanied by Highway Patrolman Gene DeSalme. They saw a brown Ford automobile parked on the shoulder of the highway and observed two men walking away from the area. The troopers obtained the license number of the automobile and, as a result of the license check, found that the license had been issued to Gary Ozment of Rolla, Missouri. DeSalme knew Mr. and Mrs. Ozment, that Mrs. Ozment worked at the Holiday Inn in Rolla, and that she drove the brown Ford to work.

The troopers arrested the two men for suspicion of tampering with a motor vehicle, and advised them of their constitutional rights. One of the men was defendant, and the other was his friend, Mathis. The automobile was searched and an address book was found, which defendant admitted belonged to him. During the search, the troopers noticed that the ignition key system had been punched or pulled out. The troopers searched defendant's suitcase and found a dent puller (a device that can be screwed into an ignition lock and, by means of pressure on a lever, pulls the lock out and exposes the ignition wires). The suspects were then questioned by the troopers. Defendant confessed to the crime. He admitted that the dent puller was his, and that he had purchased it for the express purpose of pulling ignition switches so that he could start other people's automobiles without keys. He admitted that he had "punched" the ignition on the brown Ford at the Holiday Inn parking lot in Rolla, and had driven the automobile away from that location. The automobile, however, ran out of gasoline and defendant and Mathis were walking away from it when they were arrested.

Gary Ozment testified that he and his wife owned the brown Ford. His wife had driven the automobile to work at the Holiday Inn on December 23, 1976. He had not given anyone, other than his wife, permission to drive the car on that day. Joan Ozment testified that she was Gary's wife. She drove the brown Ford to work about 8 a. m. on the morning in question and parked it on the west parking lot at the Holiday Inn. She received a call from the Highway Patrol about 10:30 a. m. and was asked to check and see if her car was still in the parking lot. She checked and it was gone. She told the troopers that two men had been at the Holiday Inn that morning "needing money or work". She had observed one of the men closely enough to identify him. That man was Mathis. She could not identify the other man. She had not given anyone permission to drive her car on that day.

Chris Sawyer Hill was the state's final witness. On direct examination, she testi-

fied that she also was working at the Holiday Inn on December 23, 1976. She stated she saw defendant in the motel lobby near the cigarette machine about 10 a. m. She was standing 6 to 8 feet from defendant. Another man, whose name she later learned was Mathis, was with defendant. She spoke briefly to Mathis, but did not talk to defendant. The two men left the premises. She saw them later, about 1 p. m., when the state troopers brought them back to the motel. At that time, she identified Mathis and defendant as the two men she had seen in the lobby earlier that morning. On cross-examination, her testimony was as follows.

"Q. Mrs. Hill, is it now?

A. Yes.

Q. Mrs. Hill, do you remember the preliminary hearing we had a few weeks ago in this case?

A. Yes.

Q. At that time, do you recall, you did identify Mr. Mathis, is that correct?

A. Yes.

Q. Do you also recall that you stated on cross-examination that you could not positively identify Mr. McFall?

A. I specified 'positively' yes.

Q. You're not sure?

A. I could identify him, but when it came down to swearing to it, that puts a little different light on the situation."

The state then rested its case. Defendant did not present any evidence.

Defendant contends that the answers of Mrs. Hill, to the questions put to her by defendant's counsel during cross-examination, qualified her testimony and removed it from the sanctity of the oath that she had taken and, therefore, the admission of such testimony into evidence was prejudicially erroneous. His contention is not supported in his brief by any legal authority.

The first case cited by defendant as alleged support for his position is *Bartlett v. Kansas City Public Service Co.*, 349 Mo. 13, 16, 160 S.W.2d 740, 742 (1942). *Bartlett* holds, among other things, that the ultimate purpose of any trial upon an issue of fact is the ascertainment of truth and that two safeguards toward attaining that goal are 1) the judicial oath administered to the witness with its attendant penalties for false swearing, and, 2) cross-examination, through which false swearing can be exposed, as well as circumstances bearing upon inaccuracies in the testimony of the witness in the areas of observation, recollection and narration. Those appellate observations, true as they are, have no bearing here. Mrs. Hill was sworn as a witness before she commenced her testimony and she was cross-examined. The holdings in the other two cases cited by defendant, *State v. Maxwell*, 502 S.W.2d 382, 391 (Mo. App.1973) and *State v. Cushenberry*, 157 Mo. 168, 179–180, 56 S.W. 737, 742 (1900) are diametrically opposed to defendant's position here. In *Maxwell*, the court held that competency of identification testimony is not affected by failure of the witness to testify positively as to the identity of the accused. It further held that the witness may testify as to his belief concerning such identification, provided that such belief was based on personal observation, as was the case here, and that it is up to the trier of fact to determine the issue of identification from all of the evidence and circumstances, including the qualified statements of the witness in question. The appellate court reached the same result in *Cushenberry*, saying that it is sufficient for the reception of a witness' testimony for the witness to say that he believes the person to be the same, although he will not pointedly swear to such as a fact, and the weight to be attached to his testimony is for the jury. Defendant candidly admits the holdings of *Maxwell* and *Cushenberry*, but argues that the rule of law pronounced in those cases is wrong and should be changed because, by reason of such rule, witnesses are encouraged to testify as to supposition, not fact.

It is true that Rule 84.04(d), V.A. M.R., does not require a citation of authority in every instance to preserve a point for appellate review. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978). However, in cases where the subject matter is not a

first impression situation (as is the situation here since the precise point in issue has been ruled on many times by Missouri Appellate Courts [1]) an appellant has the burden of proving, by logic, that a rule of law should be changed because its application is prejudicially erroneous and in violation of due process. In that pursuit, an appellate court need not, and should not, serve as an advocate for defendant on appeal, by formulating legal arguments to buttress generalities contained in defendant's brief.

We see no reason here to attempt to change the rule of law that a witness may give a qualified answer on the question of eyewitness identification. The testimony of witness Hill was under oath, as is required by law. The jury was aware that the witness was testifying only as to her degree of recollection based on her personal observations, and could not have been misled by her answers. Her testimony was competent, relevant, and material, and was properly admitted. The jury had the opportunity to weigh her testimony, along with all other facts and circumstances in the case, and to give it such credit as they thought it deserved. The evidence in this case, even if the jury had completely disregarded the testimony of Mrs. Hill, established beyond a reasonable doubt that defendant was guilty as charged. The jury so found. The verdict was proper and should be upheld.

The judgment is affirmed.

FLANIGAN, C. J., and TITUS, J., concur.

---

1. *State v. Cushenberry*, 157 Mo. 168, 56 S.W. 737, 742 (1900); *State v. Williams*, 515 S.W.2d 544, 549 (Mo.1974); *State v. Blackmore*, 327 Mo. 708, 715–716, 38 S.W.2d 32, 34–35 (1931); *State v. Carolla*, 316 Mo. 213, 226–227, 292 S.W. 721, 727 (1926); *State v. Dixon*, 420 S.W.2d 267, 271 (Mo.1967); *State v. Maxwell*, 502 S.W.2d 382, 391 (Mo.App.1973); *Lamb v. Heiligers*, 532 S.W.2d 820, 824 (Mo.App.1975).